IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 12-cv-00393-PAB-KLM

TIMOTHY L. BLIXSETH, an individual,

     Plaintiff,

v.

CREDIT SUISSE AG, a Swiss corporation,
CREDIT SUISSE GROUP AG, a Swiss corporation,
CREDIT SUISSE SECURITIES (USA), LLC, a Delaware limited liability company,
CREDIT SUISSE (USA), INC., a Delaware corporation,
CREDIT SUISSE HOLDINGS (USA), INC., a Delaware corporation,
CREDIT SUISSE CAYMAN ISLAND BRANCH, an entity of unknown type, and
DOES 1-100,

     Defendants.

---

## ORDER

---

This matter is before the Court on the Motion to Dismiss Plaintiff's Claim for

Breach of the Covenant of Good Faith and Fair Dealing [Docket No. 73] filed by Credit

Suisse.[1]

## I. BACKGROUND[2]

On September 30, 2013, the Court found that plaintiff failed to state a claim for

breach of the covenant of good faith and fair dealing.  Docket No. 61 at 25-26.  With

regard to plaintiff's allegations that Credit Suisse misrepresented the value of the

---

[1]Terms used in this order have the meaning set forth in the Court's Order on defendants' motions to dismiss.  *See* Docket No. 61.

[2]The relevant background facts have been set forth at length elsewhere and will not be restated here except as relevant to resolving the present motion.  *See* Docket No. 61 at 2-10.

Yellowstone Club before execution of the Credit Agreement, the Court found that such allegations were based upon non-actionable pre-contractual misrepresentations. *Id.* With regard to plaintiff's allegations that Credit Suisse's participation in the Third Amended Plan of Reorganization ("Third Amended Plan") was in an attempt to wrongfully seek reimbursement for the subject loan, the Court found that plaintiff failed to allege that Credit Suisse had engaged in an unreasonable banking practice. The Court granted plaintiff leave to amend his claim.

On October 21, 2013, plaintiff filed an amended complaint, asserting claims against Credit Suisse for tortious interference with contractual relations and breach of the covenants of good faith and fair dealing. Docket No. 68. Plaintiff's claim for breach of the covenant of good faith and fair dealing[3] alleges that Credit Suisse (1) improperly exercised its discretion under the Credit Agreement in conducting post-execution appraisals and (2) improperly participated in the Third Amended Plan in contravention of the Credit Agreement's provision releasing Yellowstone Club members and managing members from personal liability for payment of the subject loan (the "no recourse provision"). Docket No. 68 at 66-68, ¶ 145. On November 14, 2013, Credit Suisse filed the present motion, seeking dismissal of plaintiff's claim for breach of the covenant of good faith and fair dealing pursuant to Federal Rule of Civil Procedure 12(b)(6). Docket No. 73.

## II. STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

---

[3]All references to the "claim" are to plaintiff's claim for breach of the covenant of good faith and fair dealing unless otherwise indicated.

Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and alteration marks omitted).  Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286 (alteration marks omitted ); *see also Mein v. Pool Co. Disabled Int'l Emp. Long Term Disability Benefit Plan, Pool Co., Inc.*, 989 F. Supp. 1337, 1344 (D. Colo. 1998) (considering preemption argument in resolving Fed. R. Civ. P. 12(b)(6) motion to dismiss).

## III.  ANALYSIS

### A.  Appraisal

The first aspect of plaintiff's claim concerns Credit Suisse's actions under the Credit Agreement in arranging appraisals.  Plaintiff alleges that Credit Suisse, per the terms of the Credit Agreement, maintained sole discretion over the identity of the appraiser, what constituted a "Qualified Appraisal," and what constituted "Appraised Value."  Docket No. 68 at 64-65, ¶ 142.  Plaintiff also alleges that Credit Suisse was required to exercise its discretion in accordance with the "Applicable Laws" provision. *Id.* at 63-64, ¶ 141.  Plaintiff claims that Credit Suisse abused its discretion by

permitting each quarterly Qualified Appraisal Update and Appraised Value to violate various laws and professional standards governing appraisals.  *Id.* at 66, ¶ 145.

Credit Suisse argues that any obligations it owed under the Credit Agreement with respect to appraisals were owed to the Yellowstone Club, not to plaintiff.  Docket No. 73 at 6.  As such, Credit Suisse asserts that this aspect of plaintiff's claim is an attempt to enforce the rights of the corporation in violation of the shareholder standing doctrine.  *Id.* (citing *Bixler v. Foster*, 596 F.3d 751, 757 n.4 (10th Cir. 2010)).  In general, "conduct which harms a corporation confers standing on the corporation, not its shareholders."  *Bixler*, 596 at 756.  A shareholder lacks standing if his or her losses are "only derivative of a corporation's – when the individuals' losses come about only because of the firm's loss."  *Niemi v. Lasshofer*, 728 F.3d 1252, 1260 (10th Cir. 2013).  However, any shareholder with "a direct, personal interest in a cause of action" may bring suit "even if the corporation's rights are also implicated."  *Franchise Tax Bd. of Cal. v. Alcan Aluminium Ltd.*, 493 U.S. 331, 336 (1990).  In order to satisfy this exception, the plaintiff must "show some way in which his or her losses are not derivative of the corporation's losses."  *Niemi*, 728 F.3d at 1260.  Plaintiff does not directly rebut Credit Suisse's argument on this point.  Instead, plaintiff asserts that Credit Suisse's actions with respect to appraisals "had the effect of Mr. Blixseth believing (erroneously) that the . . . loan to him . . . was fully supportable" and "conceal[ed] from Mr. Blixseth that the loan amount was grossly and improperly inflated in the initial, and in each and every subsequent quarterly appraisal."  Docket No. 79 at

9, 13.[4]  As noted in the Court's Order, because any statements made by Credit Suisse

regarding the appraisals were made to plaintiff in his capacity as president and

manager of the Yellowstone Club, he cannot show a direct injury that is separate from

the injury suffered by the Yellowstone Club.  Docket No. 61 at 19-20.  Moreover,

"because it was the Yellowstone Club that secured the loan, the Yellowstone Club that

had an obligation to repay the loan, and the Yellowstone Club's properties that suffered

as a result of plaintiff's personal use of the loan proceeds, plaintiff's injury is derivative."

*Id.* at 16 (citing *Bixler*, 596 F.3d at 758-59).  To the extent plaintiff's claim is based upon

Credit Suisse's actions with respect to appraisals conducted pursuant to the Credit

Agreement, the Court will dismiss this aspect of plaintiff's breach of the duty of good

faith and fair dealing claim for failure to state a claim.

### B.  No Recourse Provision

The Credit Agreement's no recourse provision provides, in relevant part, that "no

partner or member or managing member in the Borrower shall be personally liable for

the payment of the Obligations."  Docket No. 73-1 at 4, ¶ 9.20.  Plaintiff does not assert

that Credit Suisse attempted to recover directly from plaintiff in contravention of the no

recourse provision; rather, plaintiff argues that Credit Suisse acted through the

Liquidating Trust effectively violating the no recourse provision by "choosing to pursue

---

[4]To the extent plaintiff's claim is based upon actions conducted prior to the execution of the Credit Agreement, that aspect of his claim is dismissed because, as noted in the Court's Order, "the implied covenant of good faith and fair dealing focuses on the performance of the contract, and not on pre-contractual misrepresentations." Docket No. 61 at 25 (citing *Story v. City of Bozeman*, 791 P.2d 767, 775 (Mont. 1990), *overruled in part on other grounds*, *Arrowhead Sch. Dist. No. 75 v. Klyap*, 79 P.3d 250 (Mont. 2003)).

Plaintiff through [Credit Suisse's] membership in and control of the Liquidating Trust."

Docket No. 68 at 67, ¶ 145; Docket No. 79 at 11.  Plaintiff's amended complaint alleges

that Credit Suisse appointed four of the seven members of the Liquidating Trust's board

"to direct the actions of the [Liquidating trust]" and pursued plaintiff personally "through

the sham of the [Liquidating Trust]."  Docket No. 68 at 41-42, ¶¶ 103, 104.  In defending

an adversary proceeding ("AP-14") instituted against him in the Yellowstone Club

bankruptcy, plaintiff argued that Credit Suisse controlled the Liquidating Trust.  *In re*

*Yellowstone Mountain Club LLC*, 436 B.R. 598, 673 (Bankr. D. Mont. 2010).  In

resolving plaintiff's argument that the Liquidating Trust had unclean hands, the court

stated that, "while Credit Suisse was permitted to appoint four of the seven members to

the Trust Advisory Board, the Court is not convinced that Credit Suisse controls YCLT."

*Id.* at 675.  However, the bankruptcy court also described Credit Suisse's conduct as

follows: "In a clever legal maneuver, counsel for Credit Suisse negotiated to insulate

Credit Suisse from claims by the Prepetition Lenders and also negotiated a position that

allowed YCLT to step in and seek payment on behalf of Credit Suisse on a nonrecourse

loan."  *Id.* 677-78.  As a result, the bankruptcy court found that Credit Suisse was not

entitled to an order that would allow it to benefit on speculation regarding an award

against plaintiff.  *Id.*[5]

---

[5]For the reasons stated below, the Court will not judicially notice as true the
bankruptcy court's findings of fact.

6

### 1. Preclusion and Preemption[6]

Credit Suisse's primary argument is that plaintiff's claim that Credit Suisse directed or controlled the liquidating trust fails because the bankruptcy court in AP-14 rejected plaintiff's argument that Credit Suisse exerted control over the Liquidating Trust.  Docket No. 73 at 7-8.  Although it does not explicitly mention issue preclusion, Credit Suisse's argument is a veiled assertion that preclusive effect should be given to the bankruptcy court's finding on the issue of Credit Suisse's control over the Liquidating Trust.  In order to establish issue preclusion, however, Credit Suisse must show that (1) the issue presented in the current case is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding; (2) the prior action reached a final adjudication on the merits; (3) the party against whom the doctrine is raised was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.  *Bebo Constr. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 84-85 (Colo. 1999).  Credit Suisse fails to address any of the four elements and makes no attempt to explain the circumstances under which plaintiff's argument regarding control over the Liquidating Trust was raised and adjudicated in AP-14.  Moreover, the necessary information to meet these elements is not contained in the complaint.[7]  *See Miller v.*

---

[6]Credit Suisse invokes the terms "preclusion" and "preemption" interchangeably to argue that the bankruptcy court's orders bar plaintiff's claim.  Collateral estoppel and preemption, however, describe two different doctrines.  The Court will therefore separately determine whether collateral estoppel or preemption bars plaintiff's claim.

[7]Credit Suisse argues that this problem can be solved by taking judicial notice of the bankruptcy court's decision in AP-14, arguing that the Court can take judicial notice of matters of public record.  Docket No. 82 at 3 n.2.  Credit Suisse appears to

*Shell Oil Co.*, 345 F.2d 891, 893 (10th Cir. 1965) ("Shell properly raised the defense of res judicata by motion, but we cannot say that the facts which would make the defense good appear plainly upon the face of the complaint.").  The Court declines to convert this motion into a motion for summary judgment.  *Cf. Prospero Assoc. v. Burroughs Corp.*, 714 F.2d 1022, 1025 (10th Cir. 1983) (affirming trial court's decision to convert Rule 12(b)(6) motion asserting res judicata into motion for summary judgment appropriate where both parties treated motion to dismiss as motion for summary judgment).[8]  Thus, for the foregoing reasons, Credit Suisse's issue preclusion argument fails.

---

misunderstand the concept of judicial notice.  Fed. R. Evid. 201 permits courts to judicially notice court documents to "establish the fact of such litigation and related filings," but "[f]acts adjudicated in a prior case do not meet either test of indisputability contained in Rule 201(b)."  *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998) (quotations omitted).  Thus, the bankruptcy court's finding of fact that Credit Suisse did not control the Liquidating Trust cannot be judicially noticed for its truth.  Credit Suisse also claims that, because of the bankruptcy court's finding, the Court is no longer required to accept as true plaintiff's allegations that Credit Suisse controlled the Liquidating Trust.  Docket No. 82 at 6.  The Court rejects this argument for the same reason.

[8]To the extent that Credit Suisse's argument that the bankruptcy court's orders "preclude[ plaintiff] from relitigating claims and defenses he brought or could have brought in the bankruptcy proceeding," Docket No. 73 at 8, can be construed as invoking the doctrine of claim preclusion, Credit Suisse's argument fails for a similar lack of support.  *See Burlington Ditch Reservoir & Land Co. v. Metro Wastewater Reclamation Dist.*, 256 P.3d 645, 668 (Colo. 2011) (holding that defendant seeking to assert claim preclusion must show that "(1) the first judgment is final, (2) there is identity of subject matter, (3) there is identity of claims for relief, and (4) there are identical parties or there is privity between parties to the two actions").  There is some suggestion that the bankruptcy court prohibited plaintiff from bringing claims directly against Credit Suisse.  *See In re Yellowstone Mountain Club, LLC*, No. 08-61570-11 (Bankr. D. Mont. Dec. 5, 2012).  However, neither party identifies when such a ruling may have occurred, if at all, and, if it did occur, the circumstances under which the ruling was made.  As such, the Court cannot determine to what extent the bankruptcy court proceeding has preclusive or, as discussed below, preemptive effect.

Credit Suisse also argues that plaintiff's claim is preempted by the Bankruptcy Code, claiming that any action that the Liquidating Trust took was authorized by the bankruptcy court's approval of the Third Amended Plan.  Docket No. 73 at 8.  Credit Suisse does not cite any authority in support of its argument, instead referring to its briefs in support of its motion for reconsideration.  *See* Docket No. 73 at 8 (citing Docket No. 70 at 3-4).  Credit Suisse focuses on the otherwise legal actions taken by the Liquidating Trust, but plaintiff's claims are instead based upon Credit Suisse's actions to induce the Liquidating Trust to take otherwise legal action in furtherance of Credit Suisse's *improper* objective to circumvent the no recourse provision.  In other words, although the Liquidating Trust was unquestionably authorized to take action against plaintiff, Credit Suisse is allegedly liable to the extent it used the Liquidating Trust as a mechanism to further its own improper goal in contravention of the no recourse provision.  Credit Suisse fails to squarely address whether a claim based upon its own conduct is expressly or impliedly preempted by the Third Amended Plan, the bankruptcy court, or the Bankruptcy Code, which, by itself, is a sufficient reason to reject Credit Suisse's argument on this point.[9]  *See Cook v. Rockwell Int'l Corp.*, 618 F.3d 1127, 1143 (10th Cir. 2010) ("Because Defendants advocate preemption, they bear the burden of showing that federal and state law conflict.").  To the contrary, the Third Amended Plan contained an exculpation clause releasing liability for all claims,

---

[9]Credit Suisse also relies on the fact that the bankruptcy court ruled that Credit Suisse would not be repaid out of the Liquidating Trust's recovery from plaintiff.  Docket No. 73 at 8.  However, plaintiff's claim is based on actions taken to recover from plaintiff in violation of the no recourse provision, not on what Credit Suisse may or may not recover in the course of the bankruptcy proceeding.  *See generally* Docket No. 68 at 66-68.

with the exception of those based upon "willful misconduct or gross negligence," which contemplates that Credit Suisse can arguably be liable for the acts alleged in support of plaintiff's claim.  *See* Docket No. 28-12 at 48, § 8.4.  Moreover, Credit Suisse fails to identify information relevant to its bankruptcy preemption analysis.  State law claims related to abuse of the bankruptcy process brought by a creditor or debtor are, in many circumstances, impliedly preempted by the Bankruptcy Code.  *See Glannon v. Garrett & Assoc., Inc.*, 261 B.R. 259, 265 (D. Kan. 2001) (collecting cases); *Leonard v. McMorris*, 106 F. Supp. 2d 1098, 1115 (D. Colo. 2000) (considering whether Wage Act claim brought against non-debtor was preempted and concluding that "defendants have not cited any language in the Bankruptcy Code which extends the Bankruptcy Code's protection to individuals or entities which have not filed a bankruptcy petition . . . [h]ad Congress intended that bankruptcy protection extend beyond the entity filing the bankruptcy petition, it could have drafted the Bankruptcy Code to so provide"), *reversed on state law grounds*, 320 F.3d 1116 (10th Cir. 2003).  Although Congress has provided remedies designed to prohibit misuse of the bankruptcy process, Credit Suisse does not identify which remedies are applicable to the present case or explain why the present claim is properly encompassed by the Yellowstone Club bankruptcy.  Thus, to the extent Credit Suisse argues that plaintiff's claim is somehow barred by "Bankruptcy preemption," Credit Suisse's argument fails for lack of support.[10]

_____

[10]Nonetheless, the Court finds the preemptive effect of the Yellowstone Bankruptcy, if any, to be a threshold issue.  As such, Credit Suisse is free to file a motion for summary judgment on this issue.

### 2.  Allegations in the First Amended Complaint

Credit Suisse interprets Paragraph 9.20 of the Credit Agreement as releasing Yellowstone Club partners or managing members from personal liability for repayment of the loan to Credit Suisse.  Docket No. 73 at 7.  Credit Suisse asserts that, because an implied covenant cannot add to or contradict a contract's express terms, plaintiff cannot claim that Paragraph 9.20 protects him from suit by the Liquidating Trust – an entity separate from Credit Suisse.  *Id.*  Plaintiff responds that he does not seek to create a new contractual term, but to hold Credit Suisse liable because it "knew, or knew with substantial certainty, that its course of conduct would deprive Mr. Blixseth of his reasonable expectations in the 'No Recourse to Partners' provision of the Credit Agreement while at the same time give Credit Suisse more than what it was entitled to under the Credit Agreement" and that, because Credit Suisse is a beneficiary of the Liquidating Trust, the Liquidating Trust "is seeking to collect the Credit Suisse non-recourse loan proceeds from Mr. Blixseth individually, for the benefit of Credit Suisse." Docket No. 79 at 8, 11.  The issue then becomes whether Credit Suisse's actions in influencing the Liquidating Trust violated a reasonable expectation created by the terms of the Credit Agreement.

The duty of good faith and fair dealing does not "inject substantive terms into the parties' contract.  Rather, it requires only that the parties perform in good faith the obligations imposed by their agreement." *Wells Fargo Realty Advisors Funding, Inc. v. Uioli, Inc.*, 872 P.2d 1359, 1363 (Colo. App. 1994).  "When one party uses discretion conferred by the contract to act dishonestly or to act outside of accepted commercial practices to deprive the other party of the benefit of the contract, the contract is

11

breached." *Id.* (citing *Simmons Oil Corp. v. Holly Corp.*, 852 P.2d 523, 529 (Mont. 1993)).  Stated differently, "[t]he conduct required by the implied covenant of good faith and fair dealing is honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade."  Mont. Code Ann. § 28-1-211; *see also Story*, 791 P.2d at 775 (citing § 28-1-211).

The amended complaint most squarely addresses the issue of reasonable commercial standards by alleging that the implied covenant was violated by Credit Suisse

> voluntarily electing to not foreclose on its security as a secured creditor and being repaid on its loan through foreclosure of its security instruments but instead choosing to treat its loan as almost completely unsecured knowing with substantial certainty that repayment of its unsecured debt would be accomplished, if at all, through litigation and collection pursued against Plaintiff.

Docket No. 68 at 67-68.  The effect of this was that Credit Suisse transformed "the $375 million non-personally guaranteed predatory loan into a Reorganization Plan in which it created the YCLT to sue plaintiff to obtain all marital community he received out of his divorce, while leaving CrossHarbor/Byrne and [Credit Suisse] with ownership interests in the Yellowstone Club."  Docket No. 68 at 58, ¶ 122.  Plaintiff argues that such allegations are sufficient because

> a fully secured lender breaches reasonable commercial standards when it chooses to forego repayment of its loan through foreclosing on its over-secured collateral, and chooses instead to create an 'unsecured' deficiency and collect on its deficiency through litigation from a person who was not legally obligated to satisfy the loan in the first place, while also obtaining an ownership interest in its collateral.

Docket No. 79 at 7.  In arguing that these allegations show that Credit Suisse did not observe reasonable commercial standards, plaintiff cites two cases.  In *Uioli*, a lender

was found liable for breach of the covenant of good faith and fair dealing for "deliberately delay[ing] the foreclosure process in order to increase the [underlying] debt through the accrual of default interest and to realize its ultimate goal of taking all of the borrower's collateral." 872 P.2d at 1364. In *Merrill Lynch Bus. Fin. Servs. Inc. v. Plesco, Inc.*, 859 F. Supp. 818 (E.D. Pa. 1994), a debtor asserted a counterclaim for breach of the duty of good faith and fair dealing against a lender for allegedly liquidating collateral in a careless manner. *Id.* at 825-26. The lender contended that, because it had no contractual obligation to seek payment from its first security interest in the debtor's collateral, it was not precluded from first pursing payment from the guarantors. *Id.* at 827-28. The court found logic in the lender's argument, but rejected it for lack of citation to binding legal authority. *Id.* at 828. Neither case cited by plaintiff is entirely analogous. However, in light of the allegation that Credit Suisse chose to forego traditional foreclosure and proceed as an unsecured creditor knowing that repayment was likely to come from plaintiff – a party who it had contractually released from liability – while retaining an ownership interest in the Yellowstone Club, the Court finds that, although a close case, plaintiff has sufficiently alleged that Credit Suisse's decision to join the Third Amended Plan was not commercially reasonable. As a result, the Court does not find that the alleged implied covenant is "in direct contradiction of the written term contract." *See Farris v. Hutchinson*, 838 P.2d 374, 376-77 (Mont. 1992). The Court finds that plaintiff has sufficiently alleged his claim for breach of the duty of good faith and faith dealing.[11]

---

[11]The Court does not reach plaintiff's remaining arguments.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Credit Suisse's Motion to Dismiss Plaintiff's Claim for Breach of

the Covenant of Good Faith and Fair Dealing [Docket No. 73] is **DENIED**.


DATED September 26, 2014.

BY THE COURT:


 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge