IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 12-cv-00393-PAB-KLM

TIMOTHY L. BLIXSETH, an individual,

    Plaintiff,

v.

CREDIT SUISSE AG, a Swiss corporation,
CREDIT SUISSE GROUP AG, a Swiss corporation,
CREDIT SUISSE SECURITIES (USA), LLC, a Delaware limited liability company,
CREDIT SUISSE (USA), INC., a Delaware corporation,
CREDIT SUISSE HOLDINGS (USA), INC., a Delaware corporation,
CREDIT SUISSE CAYMAN ISLAND BRANCH, an entity of unknown type, and
DOES 1-100,

    Defendants.

---

**ORDER**

---

This matter is before the Court on the Motion for Reconsideration [Docket No. 63] filed by Credit Suisse[1] and the Motion to Reconsider Court's Order Granting Credit Suisse's Motion to Dismiss in Part and Cushman and Wakefield's Motion to Dismiss [Docket No. 64] filed by plaintiff Timothy Blixseth.

**I. BACKGROUND**[2]

On February 14, 2012, plaintiff filed the present case, asserting claims against all defendants for (1) violations of the Racketeer Influenced and Corrupt Organizations Act

---

[1] Terms used in this order have the meaning set forth in the Court's Order on defendants' motions to dismiss. See Docket No. 61.

[2] The relevant background facts have been set forth at length elsewhere and will not be restated here except as relevant to resolving the present motions. See Docket No. 61 at 2-10.

("RICO"), 18 U.S.C. §§ 1961-1968; (2) common law fraud; (3) breach of fiduciary duty; (4) common law negligence and negligent misrepresentation; (5) tortious interference with contractual relations; (6) breach of covenants of good faith and fair dealing under the Uniform Commercial Code and common law; (7) breach of contract; (8) equitable indemnity; and (9) common law conspiracy. Docket No. 1 at 68-83. Cushman and Credit Suisse filed motions to dismiss. Docket No. 24; Docket No. 28. In response to Cushman's motion to dismiss, plaintiff indicated that he was no longer pursuing his claims for tortious interference of contract, breach of contract, and equitable indemnity against Cushman. See Docket No. 34 at 34. Similarly, in his response to Credit Suisse's motion to dismiss, plaintiff stated that he is no longer seeking to prosecute his equitable indemnity claim against Credit Suisse. Docket No. 35 at 35.

On September 30, 2013, the Court dismissed all of plaintiff's claims against Cushman. Docket No. 61 at 29. The Court dismissed plaintiff's RICO, fraud, breach of fiduciary duty, negligence and negligent misrepresentation, breach of contract, equitable indemnity, breach of the implied covenant of good faith and fair dealing, and conspiracy claims against Credit Suisse. Id. The Court granted plaintiff leave to amend with respect to his claim for breach of the implied covenant of good faith and fair dealing against Credit Suisse and allowed plaintiff to proceed with his tortious interference claim against Credit Suisse, id., claims which plaintiff now asserts in the First Amended Complaint and Jury Demand [Docket No. 68]. On October 4, 2013, Credit Suisse filed a motion to reconsider, requesting that the Court reconsider its ruling on plaintiff's claim for tortious interference. Docket No. 63 at 2. On October 8, 2013, plaintiff filed a motion to reconsider, requesting that the Court reconsider its ruling

dismissing plaintiff's RICO, fraud, breach of fiduciary duty, and negligence and negligent misrepresentation claims. Docket No. 64 at 2.[3] Credit Suisse and Cushman filed responses. Docket Nos. 69, 71.

## II. STANDARD OF REVIEW

The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration, *see Hatfield v. Bd. of County Comm'rs for Converse County*, 52 F.3d 858, 861 (10th Cir. 1995), and, where a party files a motion for reconsideration prior to the entry of judgment or of a final order, Rules 59(e) and 60(b) do not apply. *Houston Fearless Corp. v. Teter*, 313 F.2d 91, 92 (10th Cir. 1962). Instead, motions for reconsideration fall within a court's plenary power to revisit and amend interlocutory orders as justice requires. *See Paramount Pictures Corp. v. Thompson Theatres, Inc.*, 621 F.2d 1088, 1090 (10th Cir. 1980) (citing Fed. R. Civ. P. 54(b)); *see also Houston Fearless Corp.*, 313 F.2d at 92. However, in order to avoid the inefficiency which would attend the repeated re-adjudication of interlocutory orders, judges in this district have imposed limits on their broad discretion to revisit interlocutory orders. *See, e.g.*, *Montano v. Chao*, No. 07-cv-00735-EWN-KMT, 2008 WL 4427087, at *5-6 (D. Colo. Sept. 28, 2008) (applying Rule 60(b) analysis to the reconsideration of interlocutory order); *United Fire & Cas. Co. v. McCrerey & Roberts Constr. Co.*, No. 06-cv-00037-WYD-CBS, 2007 WL 1306484, at *1-2 (D. Colo. May 3, 2007) (applying Rule 59(e) standard to the reconsideration of the duty-to-defend order); *M.M. v. Zavaras*, 939 F. Supp. 799, 801 (D. Colo. 1996) (applying law of the case doctrine to

---

[3]Credit Suisse's motion to dismiss plaintiff's amended claim for breach of the implied duty of good faith and fair dealing is pending. Docket No. 73.

motion for reconsideration of interlocutory order). Regardless of the analysis applied, the basic assessment tends to be the same: courts consider whether new evidence or legal authority has emerged or whether the prior ruling was clearly in error. Motions to reconsider are generally an inappropriate vehicle to advance "new arguments, or supporting facts which were available at the time of the original motion." *Servants of the Paraclete v. Does*, 204 F. 3d 1005, 1012 (10th Cir. 2000).

### A. Credit Suisse's Motion to Reconsider

Plaintiff and Edra Blixseth entered into a Marital Settlement Agreement ("MSA"), Docket No. 1 at 37, ¶ 93, which contained terms releasing plaintiff from liability (the "releases"). *Id.* at 75, ¶ 186. The Yellowstone Club was subsequently placed in Chapter 11 involuntary bankruptcy proceedings in the United States Bankruptcy Court for the District of Montana. Docket No. 61 at 8; Docket No. 63 at 3. After a Chapter 11 plan was confirmed (the "Third Amended Plan"), the Liquidating Trust was formed to collect the balance of the $375 million loan from plaintiff's individual assets. Docket No. 1 at 54, 56, ¶¶ 119(p), 120. Plaintiff claims that Credit Suisse exercised control over the Liquidating Trust and induced the Liquidating Trust to bring an adversary proceeding ("AP-14") against plaintiff to recover the loan proceeds, claiming breach of fiduciary duty and fraudulent transfer of assets. Docket No. 1 at 40, ¶ 102. The bankruptcy court found that, with respect to the claims asserted by the Liquidating Trust, plaintiff obtained the releases "with the actual intent to hinder, delay, and defraud his creditors" and found the releases to be a fraudulent transfer and, for purposes of the

adversary proceeding, "voidable" under Montana law. *In re Yellowstone Mountain Club, LLC*, 436 B.R. 598, 664 (Bankr. D. Mont. 2010).

On August 30, 2011, as part of the BGI bankruptcy, BGI's claims against plaintiff were transferred to the Liquidating Trust for purposes of collection. *In re BLX Grp. Inc.*, No. 09-61893-RBK (Bankr. D. Mont. August 30, 2011) (Docket No. 769 at 1-2). On October 5, 2011, the Liquidating Trust brought suit against plaintiff in the United States District Court for the Central District of California to recover on BGI's claims. *Kirschner v. Blixseth*, No. 11-cv-08283-GAF-SP (C.D. Cal. October 5, 2011) (Docket No. 1). The Liquidating Trust sought to "set aside the release of Blixseth's liability on the Notes as a fraudulent transfer under 11 U.S.C. § 548(a) and California Civil Code § 3439.04, and to collect on the Notes under a breach of contract theory." *Id.* (Docket No. 72 at 5). Mr. Blixseth filed a motion to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), which the court denied. *Id.* (Docket No. 18 at 13). Mr. Blixseth then filed counterclaims for contribution and unjust enrichment against Credit Suisse. *Id.* (Docket No. 27 at 3-4). The court noted that the factual allegations underlying the claims against the Liquidating Trust, which were incorporated into the claims asserted against Credit Suisse, were "substantially similar" to those asserted by plaintiff in the present case. *Id.* (Docket No. 72 at 6). On November 1, 2012, the court dismissed Mr. Blixseth's counterclaims against Credit Suisse pursuant to Fed. R. Civ. P. 12(b)(6). *Id.* (Docket No. 72 at 2, 36). On June 18, 2014, the court granted summary judgment in favor of the Liquidating Trust, giving preclusive effect to the bankruptcy court's ruling in *In re*

*Yellowstone Mountain Club* that the releases were fraudulent transfers. *Id.* (Docket No. 123 at 11).[4]

Plaintiff's original tortious interference claim alleged that, under the terms of the Third Amended Plan, the Liquidating Trust was created for the purpose of pursuing litigation against plaintiff and is controlled by, and/or acts for the benefit of, Credit Suisse. Docket No. 1 at 74, ¶¶ 184, 185. Credit Suisse allegedly "caused the Liquidating Trustee to assert that the releases were invalid and not enforceable, thus depriving Plaintiff of an extremely valuable contract right." Docket No. 1 at 75, ¶ 187. Plaintiff also alleged that Credit Suisse sought to be repaid "by taking all of the assets that plaintiff received [or] was to receive out of the MSA." *Id.* at 75-76, ¶ 188.

Credit Suisse argues that the acts upon which plaintiff's tortious interference claim are based were authorized by the bankruptcy court as part of the Third Amended Plan such that plaintiff's claim is barred by "bankruptcy preemption." Docket No. 63 at 6. Credit Suisse's argument is insufficient for multiple reasons. First, the premise of Credit Suisse's argument – that the Third Amended Plan authorized all of Credit Suisse's allegedly wrongful acts – is contradicted by plaintiff's allegations, which must be taken as true. It is not disputed that the Third Amended Plan authorized the

---

[4]Although the *Kirschner* order on Credit Suisse's motion to dismiss may have been issued after briefing was completed on the motions to dismiss in the present case, Credit Suisse made no attempt to file a supplemental brief with such information, despite ample time to do so, before the Court's Order was issued. Thus, Credit Suisse's claim that the *Kirschner* order is proper evidence to consider in this motion is unpersuasive. *See Servants of Paraclete*, 204 F.3d 1012 (noting that supporting facts that were previously available are rarely a basis for a motion for reconsideration). Nonetheless, the Court finds that the *Kirschner* case provides relevant context for the parties' arguments and will consider it only for that limited purpose.

Liquidating Trust to pursue plaintiff in order to recover loan proceeds. Docket No. 1 at 41, ¶ 103. However, plaintiff alleges that Credit Suisse engaged in conduct that is separate from or predates the conduct authorized under the Third Amended Plan. For example, although the Liquidating Trust's authority to pursue plaintiff under the Third Amended Plan is undisputed, plaintiff claims Credit Suisse exerted control over the Liquidating Trust and "caused" the Liquidating Trust to decide to assert that the releases were invalid. *Id.* at 74-75, ¶¶ 185, 188. Additionally, plaintiff claims that Credit Suisse influenced the creation of the "Term Sheet," which made plaintiff "the sole target in funding a bankruptcy plan" and was incorporated into the Third Amended Plan. Docket No. 1 at 75, ¶ 188; *see also id.* at 76, ¶ 190 (alleging that Credit Suisse "negotiat[ed] for and . . . approved the Third Amended Plan" that made plaintiff the "sole litigation target to collect over $280 million"). In other words, plaintiff's claim appears based, not on the authorized actions taken by the Liquidating Trust, but on Credit Suisse's actions in knowingly inducing the Liquidating Trust to take legal action with the purpose of furthering Credit Suisse's allegedly wrongful goal of interfering with the MSA. Such conduct arguably falls within the exception to the Third Amended Plan's exculpatory clause, which contemplates that liability may exist for "willful misconduct or gross negligence" as determined by an order of the bankruptcy court or other court of competent jurisdiction. *See* Docket No. 28-12 at 48, § 8.4; *id.* at 16, ¶ 1.62 (defining "Final Order"). Thus, Credit Suisse fails to support its assertion that the bankruptcy court "expressly authorize[d] the specific actions upon which Blixseth's tortious interference claim is based." *See* Docket No. 70 at 5.

7

Second, Credit Suisse fails to identify information relevant to its bankruptcy preemption analysis. Credit Suisse asserts, with little explanation, that "bankruptcy preemption" bars plaintiff's claims for actions taken under orders issued by a bankruptcy court. Docket No. 63 at 6. State laws are preempted in three circumstances: (1) express preemption, when Congress expressly defines the extent to which a federal law preempts state law, (2) implied preemption, when state law "'regulates conduct in a field that Congress intended the Federal Government to occupy exclusively,'" and (3) conflict preemption, when state law actually conflicts with federal law. *See Glannon v. Garrett & Assocs., Inc.*, 261 B.R. 259, 263 (D. Kan. 2001) (quoting *English v. General Elec. Co.*, 496 U.S. 72, 78 (1990)) (explaining express, implied, and conflict preemption). Credit Suisse does not appear to assert express preemption and fails to identify a specific provision of the Bankruptcy Code that would conflict with a state law claim for tortious interference with contract; thus, by process of elimination, Credit Suisse appears to argue that plaintiff's claims are barred by the doctrine of implied preemption.

State law claims related to abuse of the bankruptcy process brought by a creditor or debtor are, in many circumstances, impliedly preempted by the Bankruptcy Code. *See Glannon*, 261 B.R. at 265 (collecting cases); *Leonard v. McMorris*, 106 F. Supp. 2d 1098, 1115 (D. Colo. 2000) (considering whether Wage Act claim brought against non-debtor was preempted and concluding that "defendants have not cited any language in the Bankruptcy Code which extends the Bankruptcy Code's protection to individuals or entities which have not filed a bankruptcy petition . . . [h]ad Congress intended that bankruptcy protection extend beyond the entity filing the bankruptcy petition, it could

have drafted the Bankruptcy Code to so provide"), *reversed on state law grounds*, 320 F.3d 1116 (10th Cir. 2003). Although Congress has provided remedies designed to prohibit misuse of the bankruptcy process, Credit Suisse does not identify which remedies are applicable to the present case.[5]

Credit Suisse bases its bankruptcy preemption argument on two cases. In *E. Equip. & Servs. Corp. v. Factory Point Nat'l Bank*, 236 F.3d 117, 119 (2d Cir. 2001), plaintiffs brought various tort claims against a creditor, alleging that the creditor violated the automatic stay in the plaintiffs' personal bankruptcy by foreclosing on property owned by the plaintiffs' corporation. The Second Circuit concluded that "state tort claims alleging violations of an automatic stay must be 'brought in the bankruptcy court itself and not as a separate action in the district court.'" *Id.* at 120-21 (quoting *MSR Exploration, Ltd. v. Meridian Oil, Inc.*, 74 F.3d 910, 916 (9th Cir. 1996)). However, *Factory Point* does not address whether preemption extends to situations where, as here, the plaintiff is not a debtor and does not claim the violation of an automatic stay. In *Astor Holdings, Inc. v. Roski*, 325 F. Supp. 2d 251 (S.D.N.Y. 2003), the plaintiff was a creditor who alleged that defendant, a non-party to the underlying bankruptcy, induced breaches of an agreement between the debtor and creditor, including the allegation that defendant induced the debtor into filing for bankruptcy. *Id.* at 254-55, 259-60. The court found that the Bankruptcy Code contains remedies for the misuse of

---

[5]Credit Suisse appears to suggest that plaintiff had an opportunity to challenge Credit Suisse's misuse of the bankruptcy process in AP-14. Docket No. 28 at 10 (citing *In re Yellowstone Club*, 436 B.R. at 675). However, Credit Suisse does not indicate whether plaintiff brought, or had the ability to bring, a claim directly against Credit Suisse during the Yellowstone Club bankruptcy. As such, Credit Suisse fails to show how AP-14 is relevant to the issue of preemption.

process and that such misuse was exclusively governed by the Bankruptcy Code. Relying on the "sweeping language" in *Factory Point* and *MSR Exploration*, the court concluded that plaintiff's claims based upon the improper or abusive filing of bankruptcy papers were preempted. *Id.* at 262-63.[6] *Roski*, while similar to the present case in some respects, concerned a creditor attempting to challenge the propriety of a bankruptcy proceeding, whereas plaintiff in the present case is neither a creditor nor a debtor to the bankruptcy attempting to hold Credit Suisse, a creditor, liable for its actions in influencing the Liquidating Trust. Based on those differences in *Factory Point* and *Roski*, and the above-noted gaps in Credit Suisse's argument, the Court cannot conclude that Credit Suisse has satisfied its burden of showing clear error. *See Cook v. Rockwell Int'l Corp.*, 618 F.3d 1127, 1143 (10th Cir. 2010) ("Because Defendants advocate preemption, they bear the burden of showing that federal and state law conflict.").

Another factor justifying the denial of Credit Suisse's motion for reconsideration is its reliance on facts of which the Court cannot take judicial notice. For example, Credit Suisse argues that plaintiff's claim fails because the bankruptcy court in AP-14 determined that Credit Suisse did not control the liquidating trust. Docket No. 63 at 6.

---

[6]*Roski* also relies on a California case, *Choy v. Redland Ins. Co.*, 103 Cal. App. 4th 789, 801 (Cal. App. 2002), which held that "no *authorized proceeding* in bankruptcy can be questioned in a state court or used as the basis for the assertion of a tort claim in state court against any defendant." In *Choy*, plaintiff was injured in a car accident and brought an abuse of process claim against a bankrupt company's insurer, claiming that the company was induced by its insurer to file a bankruptcy petition so as to avoid paying plaintiff's claim. *Id.* Plaintiff argued that his claim was not preempted because it was not a suit by or against a bankruptcy debtor, an argument the court rejected based upon a line of California cases holding that authorized bankruptcy proceedings cannot support state law claims for malicious prosecution or abuse of process. *Id.* at 800-01.

Credit Suisse's argument, without explicitly saying so, appears to imply that the bankruptcy court findings should be given preclusive effect in the present case. However, in order to establish issue preclusion, Credit Suisse must show that (1) the issue presented in the current case is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding; (2) the prior action reached a final adjudication on the merits; (3) the party against whom the doctrine is raised was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action. *Bebo Constr. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 84-85 (Colo. 1999). Credit Suisse makes no attempt to satisfy any of the four elements.

Credit Suisse argues that the Court can take judicial notice of "pertinent facts . . . developed by a decision in the Central District of California." Docket No. 63 at 2 n.2. Credit Suisse misunderstands the concept of judicial notice. A court may judicially notice a document filed in another court to "establish the fact of such litigation and related filings," but "[f]acts adjudicated in a prior case do not meet either test of indisputability contained in Rule 201(b)." *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998) (quotations omitted). Thus, the Court cannot judicially notice another court's findings of fact for their truth and, furthermore, finds it inappropriate to convert Credit Suisse's Rule 12(b)(6) motion into a motion for summary judgment. *See Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215-16 (10th Cir. 2007) (holding that converting Rule 12(b)(6) motion to motion for summary judgment should only be done after the parties have had a reasonable opportunity to present material made pertinent to such a motion). It is more appropriate for the Court

to consider Credit Suisse's arguments on a more complete record. *See, e.g.*, *Kirschner* (Docket No. 123 at 11).[7] Thus, Credit Suisse has failed to show that it is entitled to the requested relief and, as such, its motion for reconsideration will be denied.

### B. Plaintiff's Motion to Reconsider

Plaintiff challenges the Court's finding that plaintiff lacked standing to assert his RICO, fraud, breach of fiduciary duty, and negligence and negligent misrepresentation claims (the "subject claims"). Docket No. 64 at 3. The Court dismissed the subject claims, finding that the injuries plaintiff alleged were derivative. Docket No. 61 at 14, 16-17, 18, 20.[8]

As set forth in the Court's Order, the shareholder standing doctrine is an equitable restriction prohibiting "'shareholders from initiating actions to enforce the rights of the corporation.'" *Bixler v. Foster*, 596 F.3d 751, 756-57 (10th Cir. 2010) (quoting *Franchise Tax Bd. of Cal. v. Alcan Aluminium Ltd.*, 493 U.S. 331, 336 (1990)). In general, "conduct which harms a corporation confers standing on the corporation, not its shareholders." *Id.* at 756. A shareholder lacks standing if his or her losses are "only derivative of a corporation's – when the individuals' losses come about only because of the firm's loss." *Niemi v. Lasshofer*, 728 F.3d 1252, 1260 (10th Cir. 2013). However, any shareholder with "a direct, personal interest in a cause of action" may bring suit "even if the corporation's rights are also implicated." *Franchise Tax Bd.*, 493 U.S. at

---

[7]Of course, Credit Suisse will have the ability to file a motion for summary judgment on this issue.

[8]Plaintiff fails to address the Court's alternative basis for dismissing plaintiff's claim for breach of fiduciary duty, namely, his failure to allege that defendants owed plaintiff a fiduciary duty. Docket No. 61 at 18.

336. In order to satisfy this exception, the plaintiff must show "some way in which his or her losses are not derivative of the corporation's losses." *Niemi*, 728 F.3d at 1260.

Plaintiff does not dispute the relevant law, but instead argues that the Court's reliance on two cases was misplaced. First, plaintiff is critical of the Court's reliance on *Bixler*, arguing that "the type of injury alleged in more akin to the facts in *Behunin v. Dow Chemical Co.*, 650 F. Supp. 1387 (D. Colo. 1986)." Docket No. 64 at 3. In *Behunin*, the court considered whether plaintiffs Gage Behunin and his wife, the sole shareholders of Gage Behunin Company, adequately alleged an injury independent of their status as shareholders. 650 F. Supp. at 1393. The court found that plaintiffs had sufficiently alleged that defendant at times disregarded the Gage Behunin Company by dealing with Gage Behunin "individually and/or independently," including founding a separate company, with "encouragement and active support of [defendants]," for the purpose of facilitating the use of Sarabond, the allegedly defective compound which was the subject of the litigation. *Id.* The court found that, "[w]here Gage Behunin doffed the shareholder cap in favor of other headgear, he has properly asserted his rights as an individual." *Id.* at 1394.

Notwithstanding the fact that, unlike *Behunin*, *Bixler* is binding legal authority, the Court disagrees with plaintiff's argument that *Behunin* is closely analogous to this case. As a threshold matter, the *Behunin* decision does not contain sufficient facts to determine if an analogous injury or relationship existed between defendants and plaintiff in his individual capacity. Moreover, the facts that are contained within the decision do not necessarily support plaintiff's position. Here there is no allegation,

unlike *Behunin*, that defendants induced plaintiff to create a new company; rather, plaintiff's interactions with defendant centered around a loan, made to the Yellowstone Club, not to him. As noted in the Order, although "plaintiff used loan proceeds for his personal use, it is undisputed that the loan itself was made to the Yellowstone Club – and not to plaintiff – meaning that a loss arising from a default would be suffered by creditors, not the borrower." Docket No. 61 at 14. In addition, plaintiff entered into the Credit Agreement in his capacity as president of BGI and manager of the Yellowstone Club. The Court acknowledges that, because diminution in value of shares is not the only injury plaintiff alleged, *Bixler* is not factually analogous in every respect. However, more damaging to plaintiff's argument for reconsideration is the fact that plaintiff makes no attempt to distinguish *Niemi*, a case with similar facts, where plaintiffs sought to invoke the exception to the shareholder standing rule. 728 F.3d at 1260-61. In *Niemi*, the plaintiffs' corporation paid $2.18 million to secure a loan from defendants and, when the loan failed to materialize, plaintiffs brought suit as individuals. *Id.* at 1253-54. The Tenth Circuit held that, because plaintiff admitted signing the loan agreement in his capacity as manager of the subject corporation and did not dispute "sen[ding] money to the defendants only in their roles as [the corporation's] creditors to satisfy [the corporation's] contractual duties to the defendants," there was no basis upon which to conclude that plaintiff established "a direct and personal loss of their own." *Id.* at 1260-61. The Court finds the facts of *Niemi* much closer to the facts here than those identified in *Behunin*.

Second, plaintiff appears to argue that the Court relied too heavily on *Sparling v. Hoffman Constr. Co., Inc.*, 864 F.2d 635, 640-41 (9th Cir. 1988), a case plaintiff interprets as holding that, where plaintiffs are the sole shareholders of a corporation, plaintiffs cannot show that their injury is distinct from other shareholders. Docket No. 64 at 5-6. Plaintiff argues that he was not the sole shareholder of the Yellowstone Club and, as such, that *Sparling* is distinguishable. Plaintiff's argument rests on a misinterpretation of *Sparling* and the Court's Order. Plaintiff is correct that *Sparling* holds that sole shareholders cannot, absent a special duty, show an "injury distinct from that to other shareholders." 864 F.2d at 641. However, the case additionally stands for the more analogous proposition that "[a]ny harm to the [plaintiffs] due to their status as guarantors of the bonds given by the corporation is also derivative of the harm to the corporation [and] does not give the [plaintiffs] standing." *Id.* Although plaintiff suggests that the Court's decision rests upon an erroneous factual conclusion that plaintiff was the sole shareholder of the Yellowstone Club, the Court made no such conclusion. To the contrary, the Order notes that, although plaintiff was the sole shareholder of BGI, BGI owned only 89% of the Yellowstone Club. Docket No. 61 at 2. Moreover, the Court's analysis focused on whether plaintiff's injuries were distinct from *the corporation*, not from other shareholders, and plaintiff fails to provide any citation to the Order suggesting otherwise. Finally, the Court's order cited *Sparling* in a single instance without any further discussion. Thus, plaintiff's argument fails.

Plaintiff argues that his non-derivative injury stems in part from the fact that he personally paid $42 million in interest to the Yellowstone Club. By plaintiff's own

admission, this fact was not alleged in the complaint, Docket No. 64 at 4 n.1, and, as such, is not a basis upon which the Court is required to reconsider its order. *See Servants of Paraclete*, 204 F.3d at 1012. Moreover, the fact that plaintiff may have paid interest on a loan made to the Yellowstone Club does not create a non-derivative injury. Such payments had the effect of satisfying the Yellowstone Club's contractual loan obligations and do not assume a personal character simply because plaintiff paid them. *See Niemi*, 728 F.3d at 1260-61 (plaintiff's guaranty of corporate loans, which had effect of satisfying corporation's "contractual duties," not "enough to establish a direct and personal loss").

Plaintiff's remaining arguments are that (1) defendant represented that the $209 million loan was for plaintiff's benefit, (2) plaintiff's injuries flow, not just from the loan to Yellowstone Club, but from defendant's scheme, (3) Credit Suisse encouraged plaintiff to use the loan proceeds for personal use while plaintiff was not acting on behalf of the corporation, and (4) plaintiff suffered independent damages in the form of legal fees, lost business opportunity, and damage to his reputation. Docket No. 64 at 4-7. Plaintiff's motion, for the most part, fails to support his arguments with citations to the relevant portions of the complaint and the Order and, as such, fails to identify the basis for his claim of clear error. *See generally id.* Moreover, plaintiff's arguments are substantially identical to those advanced in his response to Credit Suisse's motion to dismiss, Docket No. 69 at 3, which were addressed in the Order. *See, e.g.*, Docket No. 61 at 13-14. Therefore, plaintiff fails to show, as it is his burden to do, that his claim falls within the exception to the shareholder standing rule and, as a result, fails to

provide a sufficient basis for the Court to find that its prior ruling was clearly in error.[9] Plaintiff's motion for reconsideration will be denied.

## III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Credit Suisse's Motion for Reconsideration [Docket No. 63] is **DENIED**. It is further

**ORDERED** that plaintiff's Motion to Reconsider Court's Order Granting Credit Suisse's Motion to Dismiss in Part and Cushman and Wakefield's Motion to Dismiss [Docket No. 64] is **DENIED**.

DATED September 26, 2014.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge

---

[9]The Court declines to consider arguments that plaintiff advances for the first time in his reply brief. *See* Docket No. 75 at 2; *Tran v. Trustees of St. Colls. In Colo.*, 355 F.3d 1263, 1266 (10th Cir. 2004) ("Issues not raised in the opening brief are deemed abandoned or waived.").